**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

INNOVATIVE SOLUTIONS &
TECHNOLOGY, LLC,

      *Plaintiff*,

      v.

PRO SPOT INTERNATIONAL, INC.,

      *Defendant*.

Civil Action No. 21-17302

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter involves a business dispute between a distributor of automotive collision repair products and a manufacturer of the products. Currently pending before the Court is Defendant's motion to dismiss, or in the alternative, strike Plaintiff's Amended Complaint. D.E. 47. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion is **DENIED**.

## I.    FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

Plaintiff Innovative Solutions & Technology LLC ("Innovative") is in the business of distributing, training, and servicing welders for the automotive collision repair industry. Am.

---

[1] The Court refers to Defendant's brief in support of its motion (D.E. 47-1) as "Def. Br."; Plaintiff's brief in opposition (D.E. 68) as "Plf. Opp."; and Defendant's reply (D.E. 73) as "Def. Reply".

[2] When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly, the Court draws the factual background from Plaintiff's Amended Complaint. D.E. 46.

Compl. ¶ 10. Defendant Pro Spot International, Inc. ("Pro Spot") manufacturers welders and equipment for the automotive collision repair industry. *Id.* ¶ 12. In September 2013, Plaintiff began distributing Defendant's welders and equipment. Plaintiff "built virtually its entire business around Pro Spot products," and became the exclusive distributor for all of New Jersey as well as parts of New York and Pennsylvania. *Id.* ¶¶ 13-14, 17. Plaintiff alleges it had a contract with Defendant through the parties' course of dealing, and as confirmed by emails, text messages, and other written agreements. *Id.* ¶ 16. One component of the contract was credit and payment terms, which were unchanged throughout the parties' eight-year course of dealing. *Id.* ¶ 21. Plaintiff also alleges that the contract covered Plaintiff's exclusive rights to the territory and use of Defendant's intellectual property. *Id.* ¶ 64.

In 2019, Plaintiff began complaining to Defendant about the costs it was incurring to repair new, allegedly defective welder models--the I4s--under the parties' warranties. Plaintiff also complained because Defendant demanded that Plaintiff provide free labor to Defendant's "large corporate (a/k/a 'MSO') accounts, and original equipment manufacturer (a/k/a 'OEM') program accounts." *Id.* ¶¶ 31-32. After receiving Plaintiff's complaints about the MSO and OEM account repairs, Defendant's principal "threatened unspecified negative consequences for their relationship unless [Plaintiff] acquiesced." *Id.* ¶ 32. In 2020, Plaintiff rejected an offer from Defendant to purchase an unspecified ownership interest in Plaintiff in exchange for satisfaction of Plaintiff's outstanding invoices. *Id.* ¶ 36.

Plaintiff alleges that after these events, Defendant "effectively 'pulled the rug' out from under [Plaintiff] and unilaterally demanded a new and unfavorable change to the parties' agreement." *Id.* ¶ 38. When Plaintiff objected, Defendant refused to sell any additional products until Plaintiff paid all outstanding invoices. *Id.* ¶ 41. On April 5, 2021, Defendant terminated

Plaintiff as a distributor and factory authorized service and repair center. *Id.* ¶ 47. Defendant also refused to supply Plaintiff with replacement parts, despite Plaintiff's "ongoing obligation to service and repair Pro Spot products sold to its customers." *Id.* ¶ 53. Finally, on May 5, 2021, Defendant sent a cease-and-desist letter demanding that Plaintiff stop using the Pro Spot mark in connection with the sale, distribution, and promotion of goods, among other things. *Id.* ¶ 57. Plaintiff alleges that due to the cease-and-desist letter, it is unable to sell forty-two Pro Spot products in its stock. *Id.* ¶ 58.

Plaintiff filed suit in New Jersey state court in 2021, and Defendant removed the matter to this Court. In its initial Complaint, Plaintiff asserted breach of contract and tortious inference claims against Defendant. D.E. 1. On October 12, 2021, Defendant answered and asserted counterclaims. Defendant's counterclaims included breach of contract, trademark, and unfair competition claims. D.E. 5. Plaintiff then sought leave to file an amended complaint, D.E. 42, which Judge Waldor granted on December 13, 2022, D.E. 44. In the Amended Complaint, Plaintiff still pleads breach of contract and tortious interference claims. Plaintiff also asserts a promissory estoppel claim, in addition to a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), related to Plaintiff's use of the Pro Spot mark. D.E. 46. Defendant subsequently filed the instant motion to dismiss and strike. D.E. 47.

## II.    MOTION TO DISMISS

Defendant seeks to dismiss certain counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom.  *Fowler*, 578 F.3d at 210.

Defendant contends that the Court must dismiss Plaintiff's promissory estoppel claim because an express contract addresses the rights and obligations regarding the purchase and sale of Pro Spot's products.  Specifically, Defendant argues that Plaintiff cannot maintain an express and quasi-contract claim together.  Def. Br. at 4-5.  Plaintiff counters that it may plead alternative and inconsistent claims.  Plf. Opp. at 8-9.  The Court agrees with Plaintiff.  Generally, the Federal Rules of Civil Procedure permit parties to "plead alternative and inconsistent legal causes of action that arise out of the same facts."  *Nieves v. Lyft, Inc.*, No. 17-6146, 2018 WL 2441769, at *19 (D.N.J. May 31, 2018).  Rule 8 states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(d)(2).  A party may also "state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Although Plaintiff cannot ultimately recover

under breach of contract and promissory estoppel theories for the same alleged wrongful conduct, this does not preclude Plaintiff from initially pleading both claims.

Defendant also maintains that Plaintiff fails to plausibly plead a promissory estoppel claim. Def. Br. at 5-6. Defendant, however, relies on allegations in its answer to Plaintiff's initial Complaint. *See* Def. Br. at 6. But the relevant pleading is the Amended Complaint. *See Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 253 (D.N.J. 2020) ("For Defendants to do this at the motion to dismiss stage, Defendants are constrained to point to the contents of Plaintiff's complaint[.]"); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))). Consequently, the Court disregards Defendant's allegations in its Answer and Counterclaims.[3]

Turning to Plaintiff's allegations, to state a promissory estoppel claim, Plaintiff must plead (1) a clear and definite promise, (2) made with the expectation that the promisee will rely on it, (3) reasonable reliance, and (4) definite and substantial detriment. *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). Here, Plaintiff pleads that through its course of dealing, Defendant made a clear and definite promise that Plaintiff could market and sell products with the Pro Spot trademarked logo and Plaintiff relied on this promise. Am. Compl. ¶¶ 85-86. Plaintiff alleges that their eight-year course of dealing demonstrates that Defendant made this promise with the expectation that Plaintiff would rely on the promise. *Id.* ¶ 86. In fact, as of October 2020,

---

[3] In addition, even if the original Complaint controlled, Defendant would have to make a motion for a judgement on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) if it wanted the Court to consider its Answer and Counterclaims.

Plaintiff had sold more than 2,200 Pro Spot products. *Id.* ¶ 23. Defendant then sent the cease-and-desist letter demanding, among other things, that Plaintiff stop selling goods with the Pro Spot mark. *Id.* ¶ 57. Accordingly, Plaintiff can no longer sell the Pro Spot products in its stock. *Id.* ¶ 58. Thus, Plaintiff alleges it has been damaged by Defendant's refusal to allow Plaintiff's to sell products with the Pro Spot mark. *Id.* ¶ 89. Plaintiff sufficiently pleads each element necessary to state a promissory estoppel claim. Therefore, Defendant's motion to dismiss is denied with respect to Count V.

**III.    MOTION TO STRIKE**

Defendant also seeks to strike allegations in the Amended Complaint. Def. Br. at 6-11. Rule 12(f) of the Federal Rules of Civil Procedure states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "As a general matter, motions to strike under Rule 12(f) are highly disfavored." *Thompson v. Real Est. Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (citing *F.T.C v. Hope Now Modifications*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). Moreover, the decision to strike material from a pleading is discretionary. *Hope Now Modifications, LLC*, 2011 WL 883202, at *1. Motions to strike "will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)). "[W]here the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Hope Now Modifications, LLC*, 2011 WL 883202, at *1.

6

Defendant first seeks to strike Plaintiff's allegation that Defendant sold products in Plaintiff's territory, which constituted a breach of the parties' agreement. Defendant maintains that this new allegation conflicts with the initial Complaint. Def. Br. at 6-8. Defendant further argues that this addition will cause the parties to unnecessarily waste time and resources through discovery and trial. Def. Reply at 3. In the initial and Amended Complaints, Plaintiff acknowledges that Defendant sold products directly to MSO and OEM accounts. Compl. ¶ 29-30; Am. Compl. ¶ 31. In the Amended Complaint, Plaintiff appears to allege that Defendant made other direct sales in Plaintiff's territory. *Id.* ¶¶ 33-35; 66. Defendant counters that its sales in the territory were only to MSO accounts. Def. Reply at 3. Plaintiff clearly put the MSO and OEM accounts at issue in this litigation from the outset. And if Defendant is correct that there were no other direct sales in the territory, its fear of an unnecessary waste of time and resources are unfounded. Defendant does not identify any other prejudice. Moreover, Defendant's motion is more akin to one for summary judgment rather than a motion to strike, as it would require the Court to consider the sufficiency of the evidence. Accordingly, the Court will not strike these allegations from the Amended Complaint.

Next, Defendant maintains that the Court must strike Plaintiff's allegation that Defendant refused to repurchase Plaintiff's unsold stock or allow Plaintiff to sell the stock after sending the cease-and-desist letter. Def. Br. at 8-9 (citing Am. Compl. ¶¶ 60-61, 71). Defendant contends that this allegation confuses the issues because Plaintiff does not allege that Defendant contractually agreed to repurchase unsold inventory. *Id.* But this allegation is relevant to Plaintiff's damages for the breach of contract and breach of the implied covenant of good faith and fair dealing claims. In addition, Defendant fails to identify how it is prejudiced by the inclusion of this allegation. Defendant's motion to strike, therefore, is also denied with respect to the repurchase allegation.

Finally, Defendant argues that the Court must strike Plaintiff's declaratory relief claim because it is subsumed by Defendant's trademark infringement counterclaims.[4]  Defendant further maintains that Plaintiff's affirmative claim is better addressed as an affirmative defense.  Def. Br. at 10-11.  A court may exercise its discretion and decline to adjudicate a declaratory judgment claim "if it determines that issuing a declaratory judgment would serve no useful purpose." *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 560 (3d Cir. 1997).  A declaratory judgment claim would serve no purpose if it "bears complete identity of factual and legal issues with another claim being adjudicated by the parties."  *JJCK, LLC v. Project Lifesaver Int'l*, No. 10-930, 2011 WL 2610371, at *6 (D. Del. July 1, 2011) (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51 (3d Cir. 1975)).  The redundancy, however, must be clear from the pleadings.  *ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 556 (D.N.J. 2009).  Here, Defendant contends that the declaratory judgment claim is redundant to affirmative defenses Plaintiff *should* assert (the Court assumes when and if Defendant answers the Amended Complaint and asserts counterclaims).  Def. Br. at 10-11.  Frankly, this argument as to unasserted defenses to unasserted counterclaims is nonsensical.  Moreover, Defendant relies on a New Jersey state court case addressing the New Jersey Declaratory Judgment Act, N.J. Stat. Ann. § 2A:16-50.  *See* Def. Br. at 10 (quoting *Hammond v. Doan*, 316 A.2d 68, 70 (N.J. Super Ct. Law Div. 1974)).  Accordingly, the Court cannot conclude that the declaratory judgment claim is subsumed by Defendant's

---

[4] Defendant asks the Court to dismiss or strike the Declaratory Judgment claim.  Def. Br. at 10-11.  "[A] court can consider an improper Rule 12(f) motion as a motion to dismiss under Rule 12(b)(6)."  *Jordan v. Cicchi*, No. 10-4398, 2014 WL 2013385, at *1 (D.N.J. May 16, 2014).  Alternately, a Rule 12(b)(6) motion to dismiss "can be treated as a motion to strike under Federal Rule of Civil Procedure 12(f)."  *Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020).  Consequently, the Court does not focus on which rule is procedurally appropriate.

trademark claims—again, assuming that Defendant is going to assert such claims in the future. Consequently, Defendant's motion to strike is denied with respect to Count VI.

## IV.     CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 4th day of May, 2023,

**ORDERED** that Defendant's motion, D.E. 47, is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.